229 N.J. Super. 17 (1988)
550 A.2d 993
SIDNEY E. HEIMBACH AND LOUISE M. HEIMBACH, PLAINTIFFS-APPELLANTS,
v.
REGINALD STERLING MUELLER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 20, 1988.
Decided November 22, 1988.
*18 Before Judges HAVEY and BROCHIN.
David M. Paris of counsel and on the brief for appellants (Piro, Zinna, Cifelli & Paris, attorneys).
The opinion of the court was delivered by BROCHIN, J.S.C. (temporarily assigned).
*19 This is an appeal from a judgment of no cause for action which was entered against plaintiffs following an ex parte proof hearing after defendant's default. The issue before us is whether the standard by which the trial judge tested the sufficiency of plaintiffs' proofs was appropriate. We hold that it was not.
Plaintiffs Sydney and Louise Heimbach were the owners of a carriage house, the second story of which was rented to defendant Reginald Mueller as a dwelling. The carriage house was destroyed by fire. The Heimbachs sued Mr. Mueller for their loss, alleging that the fire was caused by his negligence. Mr. Mueller filed no answer and a default was entered against him. Following an ex parte hearing, at which plaintiffs presented evidence bearing on both liability and damages, the court ruled that they had not sustained their burden of proving that the fire had resulted from the defendant's negligence, and it entered judgment for the defendant.[1] The plaintiffs now appeal from that judgment.
Plaintiffs' proofs that defendant negligently caused the fire were presented through the testimony of Mrs. Heimbach and Lieutenant Morgan, an officer of the local fire department who had investigated the origin of the blaze. Mrs. Heimbach testified that, following the fire, Mr. Mueller told her husband in *20 her presence, "I guess it [the fire] was all my fault" because he "had been standing on the deck smoking and flipping down cigarettes." Lieutenant Morgan expressed the opinion that, on the basis of the investigation which he and his department had conducted, the fire had probably been caused by cigarettes thrown out of the building onto a pile of high grass, leaves, cigarette butts and cigarette filter material which had accumulated in a rear yard beneath a window.
About Mr. Mueller's admission of responsibility to which Mrs. Heinbach had testified, the trial judge said "... I simply don't believe that it was said, or if it was said, it was said in such vague terms, and we don't know what condition Mr. Mueller was in, being it was New Year's Eve at the time, or what he meant by what he said, if he did say it." The court rejected Lieutenant Morgan's testimony because it was based in part on Mr. Mueller's admission that he had been throwing out cigarettes. The court said, "It's not clear out of what or off of what ... [and] he doesn't say that he knew they were lighted or that they were lighted." Accordingly, the court entered judgment for defendant, holding that plaintiffs had not sustained their burden of proving "by a preponderance of the evidence" that the fire which destroyed their building had been caused by defendant's negligence.
The trial court's entry of a judgment of no cause for action on the ground that plaintiffs did not adequately prove defendant's negligence requires this court to consider the standard which a plaintiff should be called upon to meet in order to win a judgment after default. Although trial courts have been directed to view a plaintiff's proofs "indulgently" in the context of a proof hearing, see Morales v. Santiago, 217 N.J. Super. 496, 505 (App.Div. 1987), and the general practice of our courts has been to require only a prima facie case, our reported opinions have not provided any more specific guidance.
The reported decisions of most other jurisdictions are not helpful for formulating a rule for our State. New Jersey's *21 salutary practice has been to allow the trial judge the discretion to require proof of liability at a default hearing.[2]R. 4:43-2(b); Douglas v. Harris, 35 N.J. 270, 276 (1961); Reilly v. Perehinys, 33 N.J. Super. 69, 72-74 (App.Div. 1954). Our practice, however, represents a minority view. As this court has recognized, "under the general rule obtaining in most jurisdictions, upon a default in pleading, whether in equity or at law, proof of the allegations of the complaint will not be entertained." Reilly v. Perehinys, 33 N.J. Super. 69, 73 (App.Div. 1954). See also Annotation, "Neccessity of Taking Proof as to Liability against Defaulting Defendant," 8 A.L.R.3d 1070 (1966).
In jurisdictions which follow the majority rule, if the plaintiff's complaint alleges facts which, if true, establish the defendant's liability, the court may not refuse to enter a default judgment upon proof of damages alone. For example in State ex rel. Nilsen v. Cushing, 253 Or. 262, 453 P.2d 945 (Or.Sup.Ct. 1969), the court mandamused a trial judge to enter a default judgment without oral proofs. In Southern Ariz. Sch. For Boys v. Chery, 119 Ariz. 277, 580 P.2d 738 (Ariz.Ct. of App. 1978), where plaintiffs defaulted by failing to answer a counterclaim which alleged that certain losses had resulted from their breach of contract, the trial court was held to have acted improperly by demanding proof that those losses were a direct and foreseeable consequence of the breach and by ruling *22 against the counterclaimant for lack of such proof. In Anderson v. Gallman, 99 A.2d 560 (D.C.Mun.Ct. of App. 1953), at a proof hearing in an automobile negligence case, the plaintiff was offered as a witness to testify only about the amount of damages sustained by his automobile. During the course of testimony, however, he testified to facts which the trial judge concluded established his contributory negligence. The court therefore entered judgment for the absent defendant. On appeal, the reviewing court reversed, holding that the default established the defendant's liability so that the proofs should have been limited to damages alone. Id. at 561.
In Douglas v. Harris, supra, 35 N.J. at 277, which approved Reilly's acknowledgment of our trial judges' discretion to demand proof of liability at hearings in default cases, the court noted that our practice is modeled after the federal practice under Federal Rule 55, 55 F.R.C.P., 28 U.S.C.A. See Wright, Miller & Kane, 10 Federal Practice and Procedure (2d ed. 1983) § 2688. The leading case of Trans World Airlines v. Hughes, 449 F.2d 51 (2nd Cir.1971), rev'd on other grounds, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973), exemplifies and elaborates on that federal practice which, according to the court, was based upon the "venerable but still definitive case" of Thomson v. Wooster, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885). According to the Court of Appeals in Trans World Airlines, "so long as the facts as painted by the complaint `might ... have been the case,' they may not now be successfully controverted by" the defaulted defendant. 449 F.2d at 64, quoting from Thomson v. Wooster, supra, 114 U.S. at 115, 5 S.Ct. at 794. Applying that rule, the Court of Appeals approved the trial court's decision that the defendant's default admitted every allegation of fact in the complaint which was susceptible of proof by legitimate evidence except:
(1) allegations which were made indefinite or erroneous by other allegations of the complaint,
*23 (2) allegations which were contrary to facts of which the court would take judicial notice, or
(3) allegations which were contrary to uncontroverted material in the file of the case. 449 F.2d. at 63.
Implicitly defining the permissible scope of inquiry at a proof hearing after default, the court declared, in Trans World Airlines v. Hughes, 449 F.2d at 64:
"We have ... reviewed all the evidence introduced and relied on by [the defaulted defendant] in its attempt to negative its liability and conclude that [the defendant] has shown nothing that renders inconceivable the likelihood that [plaintiff] could have proved at trial that actions by [the defendant] which formed the basis of the award of damages were in fact, as alleged in the complaint, violations of the antitrust laws." [Emphasis added.]
Trans World Airlines v. Hughes was a case in which the defaulted defendant had appeared and was permitted to participate, but the standard of proof which it implies is equally applicable to a proof hearing in which the defaulted defendant plays no part. When a trial court exercises its discretion to require proof of liability as a prerequisite to entering judgment against a defendant who has defaulted, what is required under the federal practice is that the plaintiff adduce proofs which show that the facts alleged "might have been the case," Id. at 64, or, to say the same thing in different words, that they could conceivably be proved at trial, and that, if proved, they would establish the legally required elements of plaintiff's claim for relief.
Although the New Jersey cases have not articulated our practice in this fashion, their results are entirely consistent with the federal rule as exemplified by Trans World Airlines. No reported case has approved the entry of a judgment in favor of a defaulted defendant on the ground that the court doubted the credibility of the testimony presented. In every case which did approve the denial of a judgment against a defaulted defendant, judgment was denied because some necessary element of plaintiff's prima facie case was missing or because plaintiff's claim was barred by some rule of law whose applicability was *24 evident either from the pleadings or from the proofs presented.[3] For example, Edelstein v. Toyota Motors Distributors, 176 N.J. Super. 57 (App.Div. 1980), denied a default judgment against a manufacturer for recission of the purchase of an automobile because there was no proof that the plaintiff had contracted with the manufacturer or that the distributor or importer was an agent of the manufacturer. Prickett v. Allard, 126 N.J. Super. 438 (App.Div. 1974), aff'd o.b. 66 N.J. 6 (1974) denied a default judgment to foreclose a tax sale certificate because plaintiff's complaint showed on its face that the foreclosure was barred by the statute of limitations. In Metric Investment, Inc. v. Patterson, 98 N.J. Super. 130 (Law.Div. 1967), aff'd 101 N.J. Super. 301 (App.Div. 1968), plaintiff in a fraud case failed to make "any showing that the representations were made to it or made with the intent that it or someone similarly situated should rely on them." 98 N.J. Super. at 132. Johnson v. Johnson, 92 N.J. Super. 457 (App.Div. 1966), reversed a default judgment because the terms of a written agreement disproved the liability claimed.
In the present case, the default judgment was not denied to the plaintiffs because some element of their cause of action was missing or because their right to recovery was barred by some rule of law whose applicability was evident either from the proofs or from their complaint. Furthermore, to paraphrase Trans World Airlines, the testimony presented did not render inconceivable the likelihood that plaintiffs could have proved at trial that actions by the defendant were in fact the negligent cause of the destruction of plaintiffs' building. There was nothing before the trial judge to disprove that plaintiffs' testimony "might ... have been the case." 449 F.2d at 64, *25 quoting from Thomson v. Wooster, supra, 114 U.S. at 115, 5 S.Ct. at 794. Consequently, it was error for the trial judge to have entered judgment in favor of defendant on the ground that she did not believe plaintiffs' proofs.
The trial judge also appears to have decided the liability issue against plaintiffs on a theory of comparative negligence. She said:
It's clear from all of the testimony and from reading of the lease that the landlord had a duty to keep and maintain the exterior of the premises in reasonable condition, so accumulation of the debris, dry leaves and high grass, I find to have been the duty of the landlord to have cleared away and that even if Mr. Mueller's cigarettes or one of them was lighted, that there was more credible evidence showing that it was the landlord's fault for not keeping the premises properly cleared; that was the greater weight of the cause of the fire than anything that Mr. Mueller did or did not do.
In Douglas v. Harris, supra, 35 N.J. at 276, the court upheld the trial court's discretion to consider the issue of the plaintiff's contributory negligence despite a default judgment's having been entered against the defendant after his answer was stricken. The Supreme Court acknowledged that contributory negligence which has not been pleaded as an affirmative defense is waived, but held that in the case before it in which the real party in interest was the Unsatisfied Claim and Judgment Fund, this ordinarily "mandatory" rule should be relaxed because of "the public policy to permit payment by the Fund only of claims where the defendant's liability is established." Id. at 282. However, the Supreme Court noted that the unavailability of the defaulted defendant had seriously hampered the plaintiff in the preparation and trial of the case. Admonishing that "the court should have indulged the inference that the information sought by plaintiff which was in defendant's sole possession ... would be beneficial to plaintiff," the Supreme Court reversed the trial court's holding that the plaintiff had been guilty of contributory negligence. Id. at 283.
The implication of Douglas v. Harris, supra, for the present case is that the trial judge should not have ruled that the plaintiffs' claim was barred by their greater comparative *26 negligence. First of all, there was no showing that there was any public policy or other exceptional circumstance applicable here which warranted the relaxation of the mandatory rule that the defense of comparative negligence is waived if it is not affirmatively pleaded. R. 4:5-4. See Dziedzic v. St. John's Cleaners & Shirt Launderers, 53 N.J. 157 (1969). Secondly, comparative negligence involves weighing the relative culpability of the plaintiffs and defendant; information about the defendant's conduct was within his sole possession. In his absence, the court should have, as the Supreme Court wrote in Douglas v. Harris, 35 N.J. at 283 "indulged the inference that ... information ... which was in defendant's sole possession would be beneficial to plaintiff[s]." Thirdly, even if there were a reason to relax the rule waiving an affirmative defense not pleaded, the plaintiffs were entitled to reasonable notice and the opportunity to meet the defense. Without that notice and opportunity, the court should not have entered judgment for defendant. Rivera v. Gerner, 89 N.J. 526 (1982).
On the issue of damages, however, we agree with the trial court. Plaintiffs assumed that the measure of damages for the destruction of the plaintiffs' building was primarily its replacement cost. But cf. Huber v. Serpico, 71 N.J. Super. 329 (App.Div. 1962); Busche v. N.Y., S. & W.R.R. Co., 10 N.J. Misc. 511, 159 A. 789 (Sup.Ct. 1932). However, no competent testimony whatsoever was offered to prove damages. The plaintiffs presented an employee of the plaintiffs' insurer. The witness had never inspected the building. He relied upon an appraisal prepared by someone who was no longer employed by the insurance company. The appraisal file prepared by the former employee was not proved or offered as a business record, assuming that it could have been, nor was the witness able to provide an adequate foundation to explain or justify the formula which had apparently been used to estimate the replacement value of the burned building. No attempt whatsoever was made to relate replacement value to fair market value at the *27 time of the loss, nor was any authority offered to the trial judge to establish the measure of damages.
In the ordinary case, when a court hearing a plaintiff's ex parte testimony following the defendant's default determines that there has been a failure of proof which can be remedied, the trial court will point out the omissions and give plaintiff the opportunity to remedy them. At an ex parte hearing without a jury, no prejudice or great inconvenience would likely result and such a practice furthers the overriding objective of our judicial system, to assure that, to the greatest extent possible, cases are decided justly upon their merits.
Here, at the close of plaintiffs' case, counsel inquired whether the judge wanted him to submit an order or an affidavit of non-military service. She replied, "That's assuming that you get a judgment ...," thus communicating to counsel her doubts that he had established a prima facie case, doubts which we have held were well founded insofar as they were based on the flaws in plaintiffs' proof of damages. The following colloqy then ensued:
Counsel: With all due respect, is there a reason?
The Court: I may find that you did not prove your case against Mr. Mueller by a preponderance of the evidence.
Counsel: Is there further testimony that you would require in order to do that?
The Court: Not that I know of. But if I need additional testimony, I'll certainly let you know. [Emphasis added]
Counsel: When can I expect an answer?
The Court: Give you an answer tomorrow.
Counsel: Thank you. Do you want me to call your chambers?
The Court: No. I'll call you as soon as I have it ready.
Plaintiffs' counsel presumably understood this exchange to mean that the court would advise counsel if, after reviewing her notes, she came to the conclusion that further testimony was needed. Until counsel appeared in court, however, to hear the trial judge read her opinion on the record, he appears not to have received any further communication from the court. No doubt he concluded that no news was good news, that no further testimony was required from him. Surely if at the *28 conclusion of plaintiffs' presentation of evidence or after the judge had reviewed her trial notes, counsel's attention had been drawn to the fact that he had failed to present competent proof of damages, he would have requested an adjournment to enable him to present the necessary evidence, and the court would undoubtedly have granted it. Perhaps the trial judge omitted to call the failure of proof to the attention of plaintiffs' counsel in this case because she concluded that plaintiffs had failed to establish negligence after having presented all of the evidence available to them on the issue. For the reasons stated above, we have come to a different conclusion and are therefore of the opinion that plaintiffs were entitled to a judgment for such damages as they could prove. Accordingly, it is now appropriate for the trial judge to give plaintiffs the opportunity to establish all of the damages which they can prove by competent, relevant evidence.
The case is reversed and remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] In the opinion which the trial judge dictated on the record to explain her ruling, she stated that the plaintiffs had not "shown any right to subrogation, having failed to supply the policy conditions and coverage" and that may have been an additional reason for entry of judgment in favor of defendant. However, N.J.S.A. 17:36-5.20 prescribes terms of fire insurance policies and those terms include a provision for subrogation. The defendant could object to the claim in this suit on the ground that it is a subrogation claim only if the lease, expressly or by implication, exculpated the tenant from liability for negligently causing the fire which destroyed plaintiffs' carriage house. See Foster Estates, Inc. v. Wolek, 105 N.J. Super. 339 (App.Div. 1969). In this case, the defendant has not objected; he has defaulted. Furthermore, no evidence was introduced suggesting any agreement by the landlords to exculpate the tenant.
[2] R. 4:43-2(b) says in part, "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any allegations by evidence or to make an investigation of any other matter, the court may conduct such hearings with or without a jury or to [sic] take such proceedings as it deems appropriate." Although this language appears in the portion of R. 4:43-2 which deals with default judgments which can be entered only by the court, presumably even in a case in which the clerk is empowered to enter a default judgment (an action for a liquidated amount in which the defendant is not an infant or incompetent and has been defaulted for failure to appear), a judge has the discretionary authority to require proofs if some reason for doing so comes to his attention. Cf. Howard Oil Co., Inc. v. Morris, 90 Misc.2d 713, 395 N.Y.S.2d 946 (Civil Ct. of City of New York 1977).
[3] Of course, we do not mean to exclude the possibility that evidence presented at a proof hearing may be so inherently incredible that the trial judge is justified in refusing to believe it. As stated by Trans World Airlines, he may reject evidence which is "inconceivable." However, in our opinion, this is not such a case.